[Cite as *M.O. v. T.M.*, 2021-Ohio-1471.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| M.O. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Petitioner-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| T.M. | : | Case No. 2020CA00100 |
| | : | |
| Respondent-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 2020MI00018




JUDGMENT:                        Affirmed/Reversed in Part and
                                 Remanded




DATE OF JUDGMENT:




APPEARANCES:

For Petitioner-Appellee                    For Respondent-Appellant

M.O., PRO SE                               ZACHARY M. SOEHNLEN
Address on Record                          4775 Munson Street, NW
                                           P.O. Box 36963
                                           Canton, OH  44735-6963

*Wise, Earle, J.*

{¶ 1}  Respondent-Appellant, T.M., appeals the June 23, 2020 judgment entry of the Court of Common Pleas of Stark County, Ohio, upholding the civil stalking protection order issued against him on March 10, 2020.  Petitioner-Appellee is M.O.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}  The parties were in a relationship and resided together from August 2014 to November 2019.  In March 2018, a dog was purchased and joined the home.

{¶ 3}  On February 10, 2020, appellee filed a petition for a civil stalking protection order against appellant.  In her petition, appellee alleged abuse from October 2018 and incidents of intimidation, and requested possession of the dog.  The trial court granted an ex parte order on same date, and ordered the return of the dog to appellee.

{¶ 4}  A hearing before a magistrate was held on February 20, 2020.  By order filed March 10, 2020, the magistrate issued a civil stalking protection order to appellee as against appellant for five years.  Findings of fact were filed contemporaneously with the order.  The order granted possession of the dog to appellee.

{¶ 5}  Appellant filed objections challenging the order, specifically arguing he was the lawful owner of the dog and had the right to possess the dog, appellee did not meet the standard under R.C. 2903.214 for the issuance of a civil stalking protection order, and the five year term was excessive.  By judgment entry filed June 23, 2020, the trial court denied the objections, and approved and confirmed the March 10, 2020 civil stalking protection order.

{¶ 6}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 7} "THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT [M.] IS THE SOLE, LAWFUL OWNER OF THE COMPANION ANIMAL"

II

{¶ 8} "THE TRIAL COURT ERRED IN HOLDING [O.] HAS THE RIGHT TO POSSESSION OF THE COMPANION ANIMAL."

III

{¶ 9} "THE TRIAL COURT GRANTED THE PROTECTION ORDER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶ 10} "THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING A FIVE-YEAR TERM FOR THE PROTECTION ORDER."

{¶ 11} For ease of discussion, we will review the assignments of error out of order.

III, IV

{¶ 12} In his third assignment of error, appellant claims the issuance of the civil stalking protection order was against the manifest weight of the evidence. We disagree.

{¶ 13} In his fourth assignment of error, appellant claims the trial court abused its discretion in imposing a five year term on the protection order. We agree.

{¶ 14} The decision whether to grant a civil stalking protection order lies within a trial court's sound discretion. *L.L. v. R.B.,* 5th Dist. Guernsey No. 17 CA 02, 2017-Ohio-7553; *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. In order to find an abuse of discretion, we must determine the trial court's decision was

unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 15} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶ 16} R.C. 2903.214 governs protection orders. Subsections (C)(1), (E)(1)(a), and (E)(2)(a) state the following in relevant part:

> (C) A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state all of the following:
>
> (1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order or committed a sexually oriented offense against the person to be protected by the

protection order, including a description of the nature and extent of the violation[.]

(E)(1)(a) * * * The court may include within a protection order issued under this section a term requiring that the respondent not remove, damage, hide, harm, or dispose of any companion animal owned or possessed by the person to be protected by the order, and may include within the order a term authorizing the person to be protected by the order to remove a companion animal owned by the person to be protected by the order from the possession of the respondent.

(2)(a) Any protection order issued pursuant to this section shall be valid until a date certain but not later than five years from the date of its issuance.

{¶ 17} "To be entitled to a civil stalking protection order, a petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking a violation of R.C. 2903.211, against the person seeking the order." *Tumblin v. Jackson,* 5th Dist. Coshocton No. 06CA002, 2006-Ohio-3270, ¶ 17. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Black's Law Dictionary* 1182 (6th Ed.1990).

{¶ 18} R.C. 2903.211(A)(1) defines "menacing by stalking" as follows in part: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or

household member of the other person or cause mental distress to the other person or a family or household member of the other person.

{¶ 19} R.C. 2903.211(D)(1) defines "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."

{¶ 20} R.C. 2903.211(D)(2) defines "mental distress" as:

    (a) Any mental illness or condition that involves some temporary substantial incapacity;

    (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶ 21} In the March 10, 2020 findings of fact entry, the magistrate/trial court found the following:

    2. The relationship between Petitioner and Respondent has become increasingly tumultuous. Respondent has exhibited behavior that intimidates Petitioner, such as leaving his firearm where she can see it when he knows that firearms make Petitioner very uneasy, pretending to shoot a firearm in the shadows near Petitioner's bedroom, and hiding or destroying possessions that belong to Petitioner or her daughter, [A.O.].

3. Respondent caused Petitioner to report to the Domestic Violence Project in 2018.

4. In November of 2019, Respondent made a verbal threat to Petitioner regarding her communication with one of Respondent's co-workers. Respondent warned Petitioner that if she ever communicated with the co-worker again, "it will be the last thing you will ever do."

* * *

14. Respondent's conduct has disrupted Petitioner's life; she is frightened for her safety and that of her daughter, and Petitioner continues to undergo therapy.

{¶ 22} On January 17, 2020, after a verbal disagreement, appellant pushed appellee "by placing his hands on her back." Finding No. 6.

{¶ 23} All of these findings are supported in the record. February 20, 2020 T. at 17-19, 22-23, 48-51, 53-57, 61. Appellant disputed appellee's version of events. *Id.* at 82-83, 86. Appellee's therapist testified and explained she diagnosed appellee with anxiety and PTSD, a lot of it caused by the current situation with appellant. *Id.* at 73. The treatment plan was to make appellee safe and reduce anxiety. *Id.* at 74. The therapist agreed there was no physical or sexual abuse between the parties. *Id.* at 75.

{¶ 24} In the March 10, 2020 findings of fact entry, the magistrate/trial court noted the preponderance of the evidence supports the issuance of the protection order "[b]ased upon the testimony of the witnesses, their manner of testifying, demeanor, and appearance on the witness stand." As this court has noted, "civil stalking protection order cases most often turn on the credibility of the witnesses." *Madison v. Wilborn,* 5th

Dist. Stark No. 2011 CA00247, 2012-Ohio-2742, ¶ 34; *Kruszynski v. Kruszynski,* 5th Dist. Fairfield No. 12-CA-133, 2013-Ohio-3355, ¶ 21.  Credibility of the witnesses is an issue for the trier of fact, as the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."  *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 552 N.E.2d 1159, 1997-Ohio-260; *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).

{¶ 25} Based upon the evidence presented, we find the trial court did not abuse its discretion in issuing the civil stalking protection order, and the decision was not against the manifest weight of the evidence.  The trial court did not lose its way.

{¶ 26} A trial court may issue a civil stalking protection order "until a date certain but not later than five years from the date of its issuance."  In this case, the trial court issued the protection order for a full five years.

{¶ 27} In 2019, appellant was traveling and staying in Utah to care for his mother. February 20, 2020 T. at 84.  By November 2019, appellant decided to sell his Ohio home that appellee was living in.  *Id.* at 84-85.  Appellant stated he closed on the Ohio house on the morning of the hearing date, and he was hoping to return to Utah "in the next couple days."  *Id.* at 103-104.  He did not have any family in Ohio and had no intentions of returning to Ohio.  *Id.* at 105.  Appellee moved out of the home on January 17, 2020, and received her ex parte order on February 10, 2020.  *Id.* at 85.  Appellant has not had any contact with appellee since January 17, 2020.  *Id.* at 45, 65, 85.  Other than the push on the back, there was never any physical violence between the parties. *Id.* at 59.  Appellee asked the trial court to continue the protection order "at least until he's moved back to Utah."  *Id.* at 98.

{¶ 28} Five years is the maximum term for a protection order, which should issue for the most serious, egregious of behaviors. Given the conduct in this case, coupled with the fact that appellant plans on residing in Utah, we find a five year term in this case to be unwarranted. We find the trial court abused its discretion in ordering a five year term, and remand the matter to the trial court to impose a lesser term commensurate with the facts of this case.

{¶ 29} Assignment of Error III is denied. Assignment of Error IV is granted.

I, II

{¶ 30} In his first and second assignments of error, appellant claims the trial court erred in failing to find he was the rightful owner of the dog and in holding appellee had the right to possess the dog. We disagree.

{¶ 31} Appellant argues under the Uniform Commercial Code (R.C. Chapter 1302), he was the sole owner of the dog at the time of purchase and he never gifted or otherwise transferred the dog to appellee. He also argues R.C. 2903.214(E)(1)(a) cited above did not authorize the removal of the dog from his possession because the dog was not "owned by the person to be protected by the order," appellee herein.

{¶ 32} Appellant testified he was the sole owner of the dog, and produced the Contract for Sale and Health Guarantee dated March 12, 2018, from the dog's breeder listing him as the buyer. February 20, 2020 T. at 78; Respondent's Exhibit A. He never gifted the dog to appellee. *Id.* at 81-82. He paid for all items required to maintain the dog and the vet bills. *Id.* at 80-81.

{¶ 33} Appellee testfied that she and appellant picked the dog out together. *Id.* at 35. "We both went on the Internet, we both found him at the same time place, we both went and met him together, we both agreed that this was the dog, it was both of ours."

*Id.* at 35-36. She believed she and appellant were co-owners of the dog from the beginning. *Id.* at 37, 72. She admitted appellant paid for the dog "because he makes so much more money," but "it was a joint decision to buy him." *Id.* at 37. She obtained the dog license, spent all the time with the dog, trained him, took him to his vet appointments, and spent money on him. *Id.* at 30-31, 36, 38. She "took care over everything for over a year and a half with him basically on my own because of [appellant's] work schedule." *Id.* at 38. Appellant "worked tons of hours, he was never home with him, [the dog] was mine to keep me company so that I wasn't alone because I'm disabled." *Id.* at 31. Appellee testified appellant "could never [have] purchased him without me being there and taking care of him, his work hours did not allow it." *Id.* at 34-35. When asked by appellee if he would have been able to purchase the dog "if it wasn't for me," appellant stated, "I wouldn't have." *Id.* at 89.

{¶ 34} Appellee has been diagnosed with anxiety and PTSD. *Id.* at 73. Her therapist testified she has observed appellee's "anxiety levels significantly decrease" in the dog's company. *Id.* at 74. She has also observed appellee without the dog and "there's quite a difference there." *Id.* at 74-75. Appellee registered the dog with the U.S. Service Dog registry and he is "in training" as soon as a spot opens up. *Id.* at 67.

{¶ 35} In the March 10, 2020 findings of fact entry at Finding No. 11, the magistrate/trial court stated, "[t]he Court is not persuaded that ownership alone in terms of who paid for an animal is alone determinative." We agree. The magistrate/trial court noted it was appellee who was the dog's primary caregiver, she was "especially bonded" to the dog, she has a prescription for a service dog and has registered the dog as her service dog, and her symptoms are much worse without the dog. Findings Nos. 7-9.

{¶ 36} Based upon the evidence presented, we find the trial court did not abuse its discretion in granting possession of the dog to appellee.

{¶ 37} Assignments of Error I and II are denied.

{¶ 38} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part, reversed in part, and remanded to said court for further proceedings consistent with this opinion.

By Wise, Earle, J.,

Delaney, J. concur.

Hoffman, P.J. concurs in part, dissents in part.

EEW/db

*Hoffman, P.J., concurring in part, and dissenting in part*

**{¶39}**     I concur in the majority's analysis and disposition of Appellant's assignments of error number I, II, and III.

**{¶40}** I respectfully dissent from the majority's disposition of Appellant's assignment of error number IV.  I do not find the trial court abused its discretion in ordering a five-year term for the protection order.