[Cite as *R.S. v. J.H.*, 2022-Ohio-40.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| R.S. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Petitioner-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| J.H. | : | Case No. 2021CA0017 |
| | : | |
| Respondent-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 20DV15


JUDGMENT:     Affirmed in Part, Reversed in Part and
Remanded


DATE OF JUDGMENT:     January 7, 2022


APPEARANCES:

For Plaintiff-Appellee

HOLLY P. REGOLI
124 West Main Street
Suite 203
Lancaster, OH  43130

For Defendant-Appellant

DENNIS E. HORVATH
250 Civic Center Drive
Suite 220
Columbus, OH  34215

*Wise, Earle, J.*

{¶ 1}   Respondent-Appellant, J.H. appeals the May 7, 2021 judgment entry of the Court of Common Pleas of Fairfield County, Ohio, granting an Order of Protection pursuant to R.C. 3113.31(F)(3). Petitioner-Appellee is R.S.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellant and Appellee lived together as a couple on and off between April 2014 and February 20, 2020. During the times they lived together, it was at the farm home of Appellee which is owned by Appellee and her ex-husband. Both Appellee and Appellant make their living in the equine industry and ran a business out of Appellee's barn. Appellee gives riding lessons and coaches youth exhibitors. Appellant trains and shows horses for owner clients, and is a coach for both adult and youth exhibitors.

{¶ 3}   On February 14, 2020, Appellant was packing up to move out of Appellee's home for the last time during which Appellant pushed Appellee several times. Based on previous altercations Appellee felt uncertain about what Appellant was going to take or what was going to happen. She therefore asked another person present on the property to call 911. Appellee told responding deputies Appellant had punched her in the face. No one witnessed any violence between the two that day and deputies noted no injury to Appellee. Deputies were present while Appellant loaded her belongings and present again the following day at the request of Appellant when she returned to retrieve her horses.

{¶ 4}   Appellant immediately moved to Indiana.

{¶ 5}   On February 28, 2020, Appellee filed, pro se, a Petition for Domestic Violence Civil Protection Order based upon the February 14, 2020 incident and alleged

prior incidents. The same day the petition was filed the trial court issued an ex parte Domestic Violence Civil Protection Order (DVCPO) effective until February 28, 2021. After numerous continuances due to the global pandemic and Appellant's work commitments, a full hearing was held on May 6, 2021.

{¶ 6} Appellee and Appellant presented the only testimony at the hearing. As to the events of February 14, 2020, Appellee maintained Appellant started a physical confrontation by pushing her several times. This caused her to call 911. Although Appellee had reported Appellant had punched her in the face that day, she did not mention that during her testimony.

{¶ 7} Appellee also alleged incidents that had taken place earlier in her relationship with Appellant beginning in 2014 when Appellant allegedly punched Appellee in the collarbone while the two were at a horse show. Appellee further alleged Appellant would drive recklessly with her in the car, threatening to run off the road and kill them both.

{¶ 8} In 2015, during a previous occasion involving Appellant moving out, Appellee stated Appellant shoved her against a wall. When Appellee caught herself to avoid falling, she broke a bone in her finger.

{¶ 9} In 2016, while the two were broke up, Appellee testified Appellant attempted to run her down at a horse show they both attended while both were on horseback. Appellee testified Appellant told her she did not need to be at the horse show and threatened to kill her. Appellee further alleged in April 2018 Appellant punched her in the face, giving her a black eye and a broken cheekbone. To explain her black eye Appellee

told clients she had been kicked by a horse. Appellee was not seen by a doctor and did not know her cheekbone was broken until 2019 when she had dental x-rays.

{¶ 10} Appellee testified nothing had happened since the February 2020 order of protection. She also admitted she had violated the order of protection by sending Appellant an email. Appellee stated during the hearing as well as in her petition that her concern going forward was Appellant showing up at the same horse shows and engaging in the same threatening and violent behavior she had demonstrated during horse shows in the past.

{¶ 11} Appellant testified she never pushed Appellee on February 14, 2020, but rather Appellee did not want her to leave and was attempting to physically restrain her. Appellant stated Appellee is bigger than her and that February 14, 2020 was not the first time Appellee had restrained her or attempted to do so. Appellant further testified she had never threatened, nor physically assaulted Appellee in any way, had never drove erratically with Appellee in the car as she would not endanger her own life in that manner, and had never run her down at a horse show as she could not risk her own reputation and livelihood by engaging in such behavior. She further testified Appellee actually had been kicked in the face by a foal while she was trying to put a blanket on it which caused her black eye and broken cheek bone. No domestic violence charges were ever filed against Appellant.

{¶ 12} By order filed May 7, 2021 the trial court issued a domestic violence civil stalking protection order to Appellee against Appellant for five years. Findings of fact were filed contemporaneously with the order. Among other conditions, the order specifically limited which horse shows Appellant could attend.

{¶ 13} Appellant timely filed an appeal and the matter is now before this court for consideration. Appellee has not filed a brief on appeal. Under App.R. 18(C), if the appellee has not filed a brief, "the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."[1]

{¶ 14} Appellant raises three assignments of error as follow:

I

{¶ 15} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER, BASED ON EVIDENCE INSUFFICIENT TO DEMONSTRATE THAT APPELLEE WAS IN DANGER OF DOMESTIC VIOLENCE."

    A. APPELLEE FAILED TO DEMONSTRATE A SUBJECTIVE FEAR OF IMMINENT, SERIOUS PHYSICAL HARM.

    B. APPELLEE FAILED TO DEMONSTRATE AN OBJECTIVE FEAR OF IMMINENT, SERIOUS PHYSICAL HARM.

    C. APPELLEE FAILED TO MEET THE REQUIRED EVIDENTIARY STANDARD OF A PREPONDERANCE OF THE EVIDENCE.

II

{¶ 16} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ISSUING THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER FOR THE MAXIMUM EFFECTIVE TERM."

---

[1] On August 12, 2021 counsel for Appellee filed a motion to withdraw as counsel. The caption of the motion indicated it was filed in the Common Pleas Court, yet the case number was an appellate court case number. The motion to withdraw failed to comply with Loc.R. 3 and was therefore denied.

III

{¶ 17} "THE DOMESTIC VIOLENCE PROTECTION ORDER CONSTITUTES AN UNREASONABLE INTERFERENCE WITH APPELLANT'S ABILITY TO PURSUE HER CHOSEN PROFESSION."

I

{¶ 18} In her first assignment of error, Appellant argues the trial court abused its discretion in issuing the DVCPO based on insufficient evidence to demonstrate Appellee was in danger of domestic violence. We disagree.

{¶ 19} Pursuant to R.C. 3113.31, in order to obtain a domestic violence CPO, the petitioner must prove by a preponderance of the evidence the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997). As defined by R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member, in relevant part:

> (a) Attempting to cause or recklessly causing bodily injury;
>
> (b) Placing another person by threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

* * *

{¶ 20} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 21} Appellant argues Appellee failed to demonstrate either subjective or objective fear of serious physical harm by a preponderance of the evidence. In *Strassel v. Chapman*, 10th Dist. Franklin No. 09AP-793, 2010-Ohio-4376 at paragraphs 7-9, our brethren on the Tenth District Court of Appeals discussed the applicable analysis:

> Civil protection orders are intended to prevent violence before it happens. *Young v. Young,* 2d Dist. No.2005-CA-19, 2006-Ohio-978, ¶ 105. Where a trial court grants a CPO based on a petitioner's fear of imminent serious physical harm, the critical inquiry under [R.C. 3113.31] is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. *Fleckner v. Fleckner*, 10th Dist. Franklin No. 98AP-1213, quoting *Strong v. Bauman*, (May 21, 1999), 2d Dist. No. 17256. Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable.

*Fleckner* at ¶ 21, quoting *Lavery v. Lavery* (Dec. 5, 2001), 9th Dist. No. 20616, appeal not allowed (2002), 95 Ohio St.3d 1409 (internal quotation marks omitted). The reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent. *Id.*, quoting *Gatt v. Gatt* (April 17, 2002), 9th Dist. No. 3217-M, citing *Eichenberger v. Eichenberger*, (1992), 82 Ohio App.3d 809, 613 N.E.2d 678.

Courts use both a subjective and an objective test in determining the reasonableness of the petitioner's fear. The subjective test inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm. *Fleckner* at ¶ 23 (collecting case). By contrast, the objective test inquires whether the petitioner's fear is reasonable under the circumstances. *Id.*

{¶ 22} We adopted this analysis in *Watts v. Watts*, 5th Dist. Fairfield No. 13-CA-63, 2014-Ohio-191, ¶ 21.

{¶ 23} In support of her argument that Appellee failed to demonstrate either subjective or objective fear of imminent serious physical harm, Appellant points out she no longer lived in Ohio when Appellee filed her petition for the DVCPO, that officers responding to Appellee's residence on February 14, 2020 could not determine a "primary aggressor" and noted no marks on Appellee in spite of the fact that she claimed Appellant had punched her in the face. She further notes Appellee waited two full weeks before filing her petition and emailed Appellant after the order was issued.

{¶ 24} First, R.C. 3113.31 provides no specific time restrictions for bringing allegations to the court in petitioning for a protective order. *Hoff v. Brown*, Stark App. No. 2000CA00315, 2001 WL 876228 (July 30, 2001). We therefore do not find Appellee's delay in filing her petition dispositive.

{¶ 25} Next, we likewise do not find Appellee's email to Appellant weighs against the trial court's decision to issue the DVCPO. We have reviewed the email and find, for the most part, it focuses on settling litigation over the business the two ran out of Appellee's barn. T. 14-15.

{¶ 26} Next, Appellant cites this court to *Bahr v. Bahr*, 5th Dist. Ashland No. 03 COA 011, 2003-Ohio-5024 in support of her argument that Appellee failed to demonstrate subjective fear of imminent serious physical harm.

{¶ 27} In *Bahr*, we found the trial court had abused its discretion in granting Petitioner-Appellee's petition for a civil protection order because while the petitioner testified as to previous acts by respondent involving physical harm and threats of physical harm, she set forth no evidence to support a conclusion that she was in fear of imminent serious physical harm on the date contained in the petition. We further found "[t]he reasonableness of appellee's fear of imminent serious physical harm may not be determined by incidents of prior domestic violence absent an initial, explicit indication that she was in fear of imminent serious physical harm on the date contained in the petition." *Id.* ¶ 29.

{¶ 28} The matter before us is distinguishable from *Bahr*. In that matter the petitioner failed to testify to any event which could be construed as a threat. Here Appellee testified "[Appellant] pushed me several times in the house, and I was - - I had just got

diagnosed with MS three days before. I had been very sick. I was not in any physical way to do anything. And when it started getting ugly in the house, I called police." Transcript of hearing (T.) at 8. Appellee stated Appellant shoved her backwards in anger. T. 9. Fearing the situation would escalate further, Appellee called 911. T. 9. She stated she later sought a protection order based on the February 14, 2020 incident as well as previous incidents. Moreover, while Appellant points out she had moved to Indiana by the time Appellee filed her petition for a DVCPO, Appellee's concern going forward was the fact that Appellant attended some of the same horse shows she attended.

{¶ 29} Finally, Appellant points out the only evidence presented was her word against Appellee's. In *Felton*, supra, The Supreme Court of Ohio noted "[d]omestic violence is seldom committed in the presence of eyewitnesses. Moreover, in many cases medical evidence is absent. Often the only evidence of domestic violence is the testimony of the victim." Moreover, credibility determinations are a matter for the trier of fact to determine. In the matter at bar, the trial court specifically found Appellee's testimony credible. Order of Protection at page 2.

{¶ 30} Appellee's fear was based on Appellant's actions on February 14, 2020 as well as her previous history of violence toward Appellee. On a previous occasion where Appellant had shoved Appellee in anger, she shoved her into a wall causing Appellee to break a bone in her finger. T. 19. Appellant was engaging in the same behavior on February 14, 2020. We therefore find Appellee provided sufficient subjective evidence of fear of imminent serious physical harm on the date in question.

{¶ 31} We additionally find Appellee's fears were reasonable under the circumstances. While Appellant again focuses on the fact that she no longer lived in

Appellee's home or even in her state, Appellee testified regarding two separate incidents of violence perpetrated by Appellant while the two were attending the same horse shows. On one of these occasions the two were not living together. T. 11-16.

{¶ 32} We conclude the trial court did not abuse its discretion in issuing the DVCPO as Appellee demonstrated both subjective and objective evidence of fear of imminent serious physical harm by a preponderance of the evidence. The first assignment of error is overruled.

II

{¶ 33} In her second assignment of error, Appellant argues the trial court abused its discretion in issuing the DVCPO for the maximum effective term. We disagree.

{¶ 34} Appellant argues five years is excessive in this circumstance. She bases her argument on our recent opinion in *M.O. v. T.M*, 5th Dist. Stark No. 2020CA00100, 2021-Ohio-1471. In that matter we found the five-year maximum term excessive based on the conduct alleged and coupled with the fact that Appellant lived in Utah.

{¶ 35} Here, while it is true Appellant moved to Indiana, it is also true that she and Appellee will have future contact because they engage in the same profession which takes them to the same locations. There was no similar circumstance in *M.O v. T.M.* We therefore find no abuse of discretion in the term of the DVCPO issued by the trial court.

{¶ 36} The second assignment of error is overruled.

III

{¶ 37} In her final assignment of error, Appellant argues the conditions contained in the DVCPO prohibiting her from attending certain horse shows constitute an

unreasonable interference with her right to engage in her chosen profession. We find this condition is overly broad.

{¶ 38} When the issue presented on review of a DVCPO is the scope of the order, the standard of review is abuse of discretion. *Williams v. Hupp*, 7th Dist. Mahoning No. 10 MA 112, 2011-Ohio-3403, ¶ 21.

{¶ 39} The DVCPO prohibits Appellant from attending certain horse shows if Appellee is also attending. The Appellee indicated she had no desire to attend horse shows in Indiana. T. 61. Appellee further testified she wanted to attend a show in Tulsa Oklahoma for her daughter's last year as a youth exhibitor as well as shows in Springfield, Ohio and Winfield, West Virginia. T.61-62. The trial court prohibited Appellant from attending these shows despite the fact Appellant has a client in Springfield, Ohio and would like to attend the show in Springfield. T. 82, Order of Protection at page 6. Appellant further testified being unable to attend these shows would be detrimental to her financially. Appellant stated the last time she attended the Springfield show with 9 horses and earned more than $6,000 in a weekend. T. 85.

{¶ 40} The nature of the party's businesses is unique. Neither can go to a different branch or location of a brick and mortar building to avoid the other and still make a living. The trial court prohibited Appellant from attending shows in three locations, Tulsa, Springfield, and Winfield. The trial court only prohibited Appellee from attending shows in Indiana which she had no intention of attending in the first place.

{¶ 41} The trial court did create an exception for both women to attend Quarter Horse Congress because it is a very large show. There was no testimony as to the size of the Tulsa or Winfield shows. T. 60-62.

{¶ 42} The trial court asked Appellee if it would be possible to maintain a distance of 50 feet apart so as to avoid contact with Appellant while at these shows. Appellee stated each place is a little bit different, but pertaining to the Springfield show:

> Let's just say at Springfield, there's, I mean, a fence of - - I don't know, maybe double the size of this room and that's, like kind of where all of, you know - - everybody stands to coach their kids. Attached to that is the makeup arena. And, like that's the space that you have to warm up horses. It's not a very big space, and - - so it is very difficult to - - I mean, to have space where you're trying to work.

{¶ 43} T. 60-61. This testimony appears to pertain to the warm up arena only and not the rest of the Springfield facility. The trial court did not inquire whether one could choose to stand elsewhere to coach a rider. Further, while Appellee stated stabling for entries at the Springfield show is in one barn there was no testimony as to the size of the barn.

{¶ 44} We find a complete prohibition of Appellant attending these horse shows troubling. These are public events at which Appellant has a legitimate commercial purpose. If Appellant and Appellee were attorneys typically practicing in the same courthouse, prohibiting one from practicing in that courthouse would certainly be unreasonable. So too here. We therefore find the trial court's decision prohibiting Appellant from attending the Springfield, Tulsa, and Winfield shows at all was arbitrary,

unreasonable, and an abuse of discretion. We remand the matter for consideration of a more equitable arrangement.

{¶ 45} The third assignment of error is sustained.

{¶ 46} The judgment of the Fairfield County Court of Common Pleas Domestic Relations Division is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.


By Wise, Earle, J.

Gwin, P.J. and

Wise, J., J. concur.


EEW/rw