[Cite as *Elkins v. Denczak*, 2023-Ohio-1545.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| NICOLE ELKINS | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Petitioner-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| NICHOLAS DENCZAK | : | Case No. 2022-AP-10-0040 |
| | : | |
| Respondent-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2022-VI-09-0352


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 May 8, 2023


APPEARANCES:

For Petitioner-Appellee                 For Respondent-Appellant

CAITLYN C. BENZO                        DAN GUINN
6111 Oak Tree Boulevard                 232 West 3rd Street
Suite 140                               Suite 312
Independence, OH  44131                 Dover, OH  44622

*King, J.*

{¶ 1}  Respondent-Appellant, Nicholas Denczak, appeals the October 11, 2022 order of the Court of Common Pleas of Tuscarawas County, Ohio, granting a domestic violence civil protection order to Petitioner-Appellee, Nicole Elkins.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  The parties were in a relationship and resided together for seven years and have one child together.  Elkins left the shared residence on August 6, 2022.

{¶ 3}  On September 13, 2022, Elkins filed a petition for a domestic violence civil protection order against Denczak.  In her petition, Elkins alleged stalking behaviors, in-person and phone harassment, physical abuse, sexual abuse, animal abuse, property damage, and alcohol and substance abuse.  Elkins also alleged Denczak had access to weapons.  The trial court granted an ex parte order on same date.

{¶ 4}  A hearing was held on October 5, 2022.  By order filed October 11, 2022, the trial court issued a domestic violence civil protection order to Elkins as against Denczak for three years, to expire on October 5, 2025.

{¶ 5}  Denczak filed an appeal with the following assignments of error:

I

{¶ 6}  "THE COURT ERRED IN ISSUING A CIVIL PROTECTION ORDER AGAINST THE APPELLANT."

II

{¶ 7}  "THE COURT ERRED IN HAVING AN EX PARTE COMMUNICATION WITH THE APPELLEE AFTER THE CONCLUSION OF THE HEARING."

I

{¶ 8}   In his first assignment of error, Denczak claims the trial court erred in granting Elkins a civil protection order.  We disagree.

{¶ 9}   A petition for a domestic violence civil protection order is governed by R.C. 3113.31.  Subsection (A) states the following in relevant part:


(A) As used in this section:

(1) "Domestic violence" means any of the following:

(a) The occurrence of one or more of the following acts against a family or household member:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code[.]


{¶ 10} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence.  R.C. 3113.31(D)." *Felton v. Felton,* 79 Ohio St.3d 34, 1997-Ohio-302, paragraph two of the syllabus.  "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows

that the fact sought to be proved is more probable than not." *Black's Law Dictionary* 1182 (6th Ed.1990).

{¶ 11} A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 12} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *L.L. v. R.B.,* 5th Dist. Guernsey No. 17 CA 02, 2017-Ohio-7553; *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 13} As stated by this court in *Ferguson v. Ferguson,* 5th Dist. Morgan No. 20AP0004, 2021-Ohio-297, ¶ 35:

In *Watts v. Watts*, 5th Dist. Fairfield No. 13-CA-63, 2014-Ohio-1901, we cited to the Tenth District's analysis necessary to determine whether to grant a domestic violence CPO:

Civil protection orders are intended to prevent violence before it happens. *Young v. Young*, 2d Dist. No.2005-CA-19, 2006-Ohio-978, ¶ 105. Where a trial court grants a CPO based on a petitioner's fear of imminent serious physical harm, the critical inquiry under [R.C. 3113.31] is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. *Fleckner v. Fleckner*, 10th Dist. Franklin No. 98AP-1213, quoting *Strong v. Bauman*, (May 21, 1999), 2d Dist. No. 17256.

Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if they (sic) fear resulting from those threats is reasonable. *Fleckner* at ¶ 21, quoting *Lavery v. Lavery* (Dec. 5, 2001), 9th Dist. No. 20616, appeal not allowed (2002), 95 Ohio St.3d 1409 (internal quotation marks omitted). The reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent. *Id.*, quoting *Gatt v. Gatt* (April 17, 2002), 9th Dist. No. 3217-M, citing *Eichenberger v. Eichenberger*, (1992), 82 Ohio App.3d 809, 613 N.E.2d 678.

Courts use both a subjective and an objective test in determining the reasonableness of the petitioner's fear. The subjective test inquires whether the respondent's threat of

force actually caused the petitioner to fear imminent serious physical harm. *Fleckner* at ¶ 23 (collecting case). By contract, the objective test inquires whether the petitioner's fear is reasonable under the circumstances. *Id.*

*Strassel v. Chapman*, 10th Dist. Franklin No. 09AP-793, 2010-Ohio-4376, paragraphs 7-9.

*Accord R.S. v. J.H.,* 5th Dist. Fairfield No. 2021CA0017, 2022-Ohio-40, ¶ 21.

{¶ 14} A hearing was held on October 5, 2022. The trial court heard from each party. Elkins represented herself, accompanied by a victim advocate; Denczak appeared with counsel.

{¶ 15} Elkins testified on September 10, 2022, she was seated in her vehicle when Denczak approached her vehicle "screaming at me literally on the square of New Philly, juggling my car handle." T. at 3. Elkins testified she "was very fearful that he would get in and what he would do, the look in his eyes was not normal. I was very scared but I have a, I have a lot of different incidents as well." *Id.* From the time she left the parties' residence on August 6, 2022 until August 31, 2022, she "received tons of harassing and threatening text messages from Nick to the point that I ultimately had to change my phone number because no matter how many times I told him to cease contact he did not respect that, did not listen to that so I changed my phone number." T. at 4-5. On August 25, 2022, Denczak followed Elkins "in his work van when he saw me leaving a friend's house

and then proceeded to text me about it." T. at 5. On September 29, 2002, after the emergency order of protection was in place, Denczak contacted Elkins's best friend to try "to make plans to have somebody else come and get my stuff that he has been withholding from me for months." *Id.*

{¶ 16} On cross-examination, Elkins testified on the September 10th incident, she did call the police, but they did not charge Denczak with anything. T. at 6. She was advised to obtain an order of protection. *Id.* She did not call the police over the harassing and threatening texts as she took it upon herself to change her phone number. T. at 7. Upon questioned by the trial court as to whether she was in imminent fear or harm over the texts, Elkins testified: "Yes. I mean I'm deathly afraid of him. I am literally shaking seeing him in the courtroom." *Id.*

{¶ 17} Denczak took the stand and referred to Elkins as his "[c]razy ex." T. at 8. He testified during the September 10th incident, he was going to pay his phone bill and Elkins was parked at the phone store. T. at 9. Elkins started yelling at him to leave and get away. *Id.* Denczak denied following her or sending her any harassing and/or threatening text messages. T. at 9-10. He has asked about seeing their child, but Elkins has not allowed visitation. T. at 10.

{¶ 18} On cross-examination, Denczak admitted to approaching Elkins's vehicle because the children inside were screaming his name, he wanted "to say hi to them," but he did not touch the door handle. T. at 11. When Elkins asked Denczak, "are you honestly saying that you have not sent me not one threatening text message," Denczak stated, "I respond in the way I get a text." *Id.* When asked by the trial court if he has responded to texts Elkins has sent him, Denczak testified: "No." T. at 12. He testified he

was not following Elkins on August 25th, he was doing a job in Dennison and he was with his boss. *Id.*

{¶ 19} In its October 11, 2022 order, the trial court did not include any findings of fact, but found "by a preponderance of the evidence that 1) Petitioner and Petitioner's family or household members are in danger and have been a victim of domestic violence as defined in R.C. 3113.31(A) committed by Respondent and 2) the following orders are equitable, fair, and necessary to protect the persons named in this Order from domestic violence."

{¶ 20} The order is very sparse, and Denczak did not request findings of fact and conclusions of law. " '[B]ecause a lack of findings necessarily circumscribes appellate review, an appellate court will generally presume the trial court applied the law correctly and affirm if there is some basis in the record for doing so.' " *York v. York,* 4th Dist. Meigs No. 21CA5, 2022-Ohio-4733, quoting *Law Office of Natalie F. Grubb v. Bolan*, 11th Dist. Geauga No. 2010-G-2965, 2011-Ohio-4302, ¶ 26, citing *Bugg v. Fancher,* 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, ¶ 10. As stated by this court in its review of a child custody case:

> We conclude that when separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate

conclusions of fact which are consistent with his judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.

The message should be clear: If a party wishes to challenge the custodial judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

*Pettet v. Pettet,* 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (5th Dist.1988).

{¶ 21} In this case, Elkins testified she was in imminent fear or harm over the threatening texts Denczak sent to her. She testified she was deathly afraid of him. As cited above, threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable. Subjectively, the threatening texts caused Elkins to fear imminent serious physical harm. Objectively, there are no texts in the record for us to review. The trial court was able to view the demeanor, attitude, and credibility of each party and as the trier of fact, was in the best position to assess credibility.

{¶ 22} Upon review, we find sufficient evidence was presented to support the trial court's decision under a preponderance of the evidence standard. We find the trial court did not abuse its discretion in issuing the domestic violence civil protection order.

{¶ 23} Assignment of Error I is denied.

II

{¶ 24} In his second assignment of error, Denczak claims the trial court erred in having an ex parte communication with Elkins after the hearing.

{¶ 25} Following the hearing, Denczak and defense counsel left the courtroom. Elkins stated to the trial court, "[h]e still has all my stuff. I want my stuff." T. at 14. While waiting for Denczak and his counsel to return, Elkins stated, "[h]e's had me scared for seven years." T. at 16. The trial court noted, "there's no police reports, there's no acts of things" and then the following exchanges occurred (T. at 16-17):

MS. ELKINS: On March First he had it where I couldn't even get up off the ground, he smashed my computer in a drunken rage.

THE COURT: You know what. Tell the police, doggone it. Look I'll try to do this, I'll try to do this --

VICTIM ADVOCATE: Your Honor, please do not blame my client. In domestic violence situations it's not uncommon for victims to not go to the police.

THE COURT: You know what. If they say there is an order, ma'am --

MS. ELKINS: There was a police report.

* * *

MS. ELKINS: Can I give you something?

THE COURT: Let me see if I can get this resolved.

MS. ELKINS: This top one, there is a police report for that.

THE COURT: There is. March First of Twenty Twenty-Two?

MS. ELKINS: Yes.  He was drunk, he held me on the floor where I couldn't even get up and then he --

THE COURT: Why didn't they charge him with assault?

MS. ELKINS: Because the maintenance guy there and he gets away with everything because he handles the police every time they come there. That's why, and so --

THE COURT: Okay, okay.

MS. ELKINS: -- this is seven years.

THE COURT: Okay, okay.

MS. ELKINS: I'm begging you.

{¶ 26} At this point, Denczak and defense counsel returned to the courtroom and the trial court attempted to negotiate the return of Elkins's "stuff."  T. at 17-18.  The trial court indicated it "may issue a civil protection order and give her time to" retrieve her property if the matter could not be resolved over the weekend.  T. at 18.

{¶ 27} While we certainly do not condone ex parte communications, there is nothing in the record to indicate the trial court considered the statements or was handed anything.  There are no exhibits included in the record.  The trial court did not include findings of fact, and Denczak did not request separate findings of fact and conclusions of law.

{¶ 28} Upon review, we find although the trial court should not have entertained the ex parte communication, there is nothing in the record to indicate the trial court considered anything presented while awaiting the return of Denczak and his counsel.

{¶ 29} Assignment of Error II is denied.

{¶ 30} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.

By King, J.

Delaney, P.J. and

Baldwin, J. concur.

AJK/db