[Cite as *Lorenz v. McDonald*, 2023-Ohio-3703.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| KAITLYN M. LORENZ, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Petitioner - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| JEREMY R. MCDONALD, | : | Case No. 2023 CA 00052 |
| | : | |
| Respondent- Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Licking County
Court of Common Pleas, Domestic
Relations Division, Case No. 2023
DR 00162


JUDGMENT:    Vacated


DATE OF JUDGMENT:    October 11, 2023


APPEARANCES:

For Petitioner-Appellee    For Respondent-Appellant

KAITLYN M. LORENZ, Pro Se    JENNIFER L. SPRINGER
5573 Lancaster Road    Joslyn Law Firm
Hebron, Ohio 43025    501 South High Street
Columbus, Ohio 43215

*Baldwin, J.*

{¶1}   Jeremy R. McDonald appeals the decision of the Licking County Court of Common Pleas, Domestic Relations Division granting appellee, Kaitlyn M. Lorenz's application for a protection order.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}   McDonald and Lorenz's relationship came to an end in July of 2022, but they did not end communication.  The parties exchanged texts and had face to face contact and not always in a calm and friendly manner.  The last contact between the parties occurred in February 2023. Lorenz, after deciding that she did not want to worry about McDonald appearing at her home, filed a petition for a protection order that was ultimately granted.  McDonald opposed the request and now contends that the record contains insufficient evidence to support the award of the order.  After a review of the record, we find that the evidence submitted may reflect a rocky relationship and many disputes, but it does not support the issuance of a five year order of protection.

{¶3}   The history of the interaction between McDonald and Lorenz prior to June 2022 is not clear in the record with the exception of both party's acknowledgment that it was a "rocky" or "toxic" relationship without offering more detail regarding that characterization. Lorenz claimed that they had a six year relationship up until July 2022 and McDonald did not refute her claim. Both also agree that Lorenz moved in with McDonald in June 2022 and moved out the following month after McDonald sent her a text message telling her she was not permitted to return to the home. McDonald's rational for excluding her from his home is not made clear by the party's testimony or the exhibits, but it was clear that he was serious that she not return. He told her in a text message that

she would be trespassing if she came in the home and he included a link to an article that contained a statement that trespassers could be shot. Lorenz did appear at the home, but McDonald's sister was present and would not allow her in and, instead, offered to have her personal items brought to her.

{¶4} McDonald received mail addressed to Lorenz after July 2022 at his home and, rather than notify the post office that she had moved, he contacted her to hand deliver it to her place of work.  She told him not to contact her, but he ignored her plea and delivered the mail to her place of work.  The record suggests that he visited her place of work more than once after the breakup and that they had a thirty-minute conversation during one of the visits.  McDonald did not demand that he leave her place of employment when he appeared nor did she contact any law enforcement agency to have him removed.

{¶5} The last contact between the McDonald and Lorenz occurred approximately four weeks prior to the hearing where the two had a discussion regarding their lives while Lorenz was seated in the car.

{¶6} Lorenz admits she was never physically assaulted and that McDonald did not threaten her with physical harm, but she contended that he was mean after he had been drinking.  She did not complain about mental distress as a result of McDonald's actions and did not complain that she feared for her safety.  Instead, she stated that "I just want to be left alone" and "I want to live my life and not have to worry about him showing up." (Transcript, March 3, 2023, p. 27, lines 2-3).

{¶7} The petition was presented to the Magistrate with both parties acting pro se. With some guidance from the trial court, the parties testified and presented witnesses and exhibits.  The Magistrate granted the protective order, concluding that McDonald "had

continued unwanted contact with [Lorenz] that has caused [Lorenz] great mental distress. Such conduct has included appearing unexpectedly at Petitioner's work and threatening to do so at other locations, in addition to several aggressive telephone conversations." (Order of Protection, March 24, 2023, p. 2). The Magistrate also found that:

"The evidence suggests that Respondent's behavior is exacerbated by his consumption of alcoholic beveregesdoes(sic). The evidence does not suggest the use of illegal drugs."

"One of Respondent's threats included informing Petitioner that it was legal to shoot intruders into his home, which the Court reads as an explicit threat of physical violence. This implies the presence of weapons and a willingness to use them."

*Id.*

**{¶8}** McDonald filed objections and supplemental objections to the Magistrate's decision, arguing that the record did not contain sufficient evidence to support the issuance of the protective order. The trial court reviewed the record and found that "* * * there does not appear to be sufficient evidence to support a finding that the Respondent caused the Petitioner great mental distress." (Opinion/Judgment Entry, May 17, 2023, p. 4). The trial court found that McDonald's reference to the legality of shooting intruders into his home was correctly described by the Magistrate as a legitimate threat of violence. The trial court concluded that the threat constituted domestic violence if the fear resulting from those threats was reasonable and that the reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent. The trial court offered no further comment on the alleged fear of Lorenz, but concluded that:

"It was not error for the Magistrate to issue an Order of Protection based on the evidence adduced at the hearing." *Id.* at p. 8.

**{¶9}** McDonald filed a timely appeal and submitted one assignment of error:

**{¶10}** "I. THE TRIAL COURT'S ISSUANCE OF THE ORDER OF PROTECTION FOR VIOLATING R.C. 3113.31 WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶11}** Appellee did not file a brief or otherwise appear in the appeal.

### STANDARD OF REVIEW

**{¶12}** The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. To find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶13}** A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and

credibility of each witness, something that does not translate well on the written page."
*Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

## ANALYSIS

**{¶14}** McDonald contends that the holding of the trial court is not supported by the evidence in the record. We have reviewed the record and find that the trial court's conclusion that a protection order was warranted as a result of McDonald's reference to a web site article that stated that trespassers may be shot is not supported by the relevant law as it does not include a finding that the threat put Lorenz "in fear of imminent serious physical harm" and we also find that the record lacks any evidence that Lorenz experienced that fear.

*{¶15}* Lorenz's request for an order of protection contains a four page narrative that provides a more coherent chronology of events between the parties. (Petition, February 21, 2023, p. 2-5). The petition makes clear that the threat that the trial court relied upon occurred early during the break between the parties, and was followed by an effort by the parties to remain friends. Lorenz decided that effort failed and she blocked all communication with McDonald until he mentioned that he had received some of her mail. In the petition Lorenz mentions that "at this point I have been stopping by after work to pick up my mail." *Id.* at p. 5. She became angry and blocked all contact with McDonald and he appeared at her place of work the next day, but was told by others that Lorenz was not there. He visited her work again the following week and met her at her car where they had a lengthy conversation and Lorenz was persuaded to unblock him on Snapchat. A week later she received "a message that made no sense" and "reblocked him." *Id.*

**{¶16}** Lorenz's testimony repeated the allegations from her petition, but added that she told either McDonald or McDonald's mother that she would call the police if McDonald appeared at her place of work or came to her home. McDonald did visit Lorenz's place of work on two occasions, but did not contact the authorities to have McDonald removed.

**{¶17}** The trial court found that record did not support a finding that Lorenz suffered mental distress sufficient to establish a violation of 2903.211, Menacing by Stalking, but concluded that she had demonstrated that McDonald's reference to the web page that discussed the legality of shooting an intruder was a legitimate threat of violence that "constitute[s] domestic violence for the purposes of R.C. 3113.31 if they(sic) fear resulting from those threats is reasonable." (Opinion/Judgment Entry, May 17, 2023, p. 8). The trial court also cited authority that requires review of the history between the petitioner and the respondent to evaluate the petitioner's allegation of fear. While the statement of law is correct, we find the trial court's analysis incomplete and we further find the record does not contain competent credible evidence to satisfy the requirements of R.C. 3113.31(A)(1)(a)(ii).

**{¶18}** Revised Code 3113.31(A)(1)(a)(ii) defines domestic violence as "Placing another person by the threat of force in fear of imminent serious physical harm * * * ." The record contains references to Lorenz's desire to "* * * to be left alone" and "* * * live my life and not have to worry about him showing up" but no clear statement that she pursued the order as a result of any fear of McDonald. And, if we construe her comments and complaints about McDonald as exhibiting fear, the record lacks any competent credible

evidence that supports a conclusion that Lorenz was in fear of "imminent serious physical harm." These gaps in the evidence warrant a reversal of the grant of the protective order.

> "In order to grant a protective order, the evidence must be clear and unequivocal that the petitioner was placed in fear of imminent physical harm. The evidence must reveal a nexus between the communication directed to a petitioner with subsequent actual fear of imminent, serious physical harm. While an objective standard is to be applied to the impact upon a victim's state of mind as it relates to threatening communications, the evidence must be unequivocal."

*Coughlin v. Lancione* (Feb. 25, 1992), Franklin App. No. 91AP–950, 1992 WL 40557 as quoted in *Fleckner v. Fleckner*, 10th Dist. No. 07AP-988, 177 Ohio App.3d 706, 2008-Ohio-4000, 895 N.E.2d 896, ¶ 24.

**{¶19}** "Imminent" means "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." Webster's Third New International Dictionary (1969), 1130." *Id.*, at ¶ 20. Lorenz did not testify that "* * * she was in imminent fear of harm [from McDonald] * * *" or that "* * * she was deathly afraid of [McDonald]. *Elkins v. Denczak*, 5th Dist. No. 2022-AP-10-0040, 2023-Ohio-1545, 213 N.E.3d 1269, ¶ 21. Lorenz references fear only in the context of McDonald showing up at her place of work, taking one of her dogs from daycare or coming to her house in the middle of the night. Her fear was that he would not leave her alone without some consequences. (Trial Transcript, p. 16, lines 6-14). We have reviewed the record and find nothing to support a conclusion that Lorenz was placed in fear of imminent serious physical harm at the hand of McDonald at any time.

**{¶20}** Lorenz's last meeting with McDonald occurred in early February, three and one-half to four weeks before the hearing, while Lorenz was in her car. The conversation was not "mean" or "aggressive" and he asked her to unblock him so he could send a message if he received more of her mail. (Trial Transcript, p. 14, lines 18-25). Lorenz did not call the authorities and did not express any fear of harm from McDonald. Instead she was frustrated that he continued to contact her and re-blocked his social media access to her. The fact that this was the last contact between the parties, that it occurred weeks before the filing of the petition and that it occurred after the text exchange referencing shooting intruders further undermines any support for the conclusion that Lorenz was in fear of imminent serious physical harm as a result of that comment. Lorenz requested a protective order, not out of fear of physical harm, but so McDonald would leave her alone. (Trial Transcript, p. 15, line 1 to p. 16, line 14).

**{¶21}** While the reference to shooting an intruder can be construed as a threat, the trial court's failure to find that McDonald feared imminent serious physical harm is a legal defect that requires we vacate the entry issuing the protective order. We further find that the record does not support a finding that Lorenz feared any physical harm and only sought to terminate all contact with McDonald.

**{¶22}** McDonald's assignment of error is well taken and the decision of the Licking County Court of Common Pleas, Domestic Relations Division is vacated.

By: Baldwin, J.

Gwin, P.J. and

King, J. concur.